IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JERMANE D. LOWE,                              )
                                              )
                      Plaintiff,              )        **CIVIL ACTION**
                                              )
v.                                            )        No.  08-3090-MLB
                                              )
JOHNNY GODDARD,                               )
                                              )
                      Defendant.              )
_____       )

**MEMORANDUM AND ORDER**

**I.  INTRODUCTION**

       This case comes before the court on petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1.)  The matter has been fully briefed and is ripe for decision.  (Docs. 2, 6, 11.) The court has reviewed those portions of the state court record which are pertinent to the issues raised in the application and finds that an evidentiary hearing is not warranted.  The application is DENIED for reasons set forth herein.

       Petitioner was convicted of first-degree felony murder and criminal discharge of a firearm following a jury trial in state court and sentenced to life in prison.  In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner does not challenge the state court's findings.  Accordingly, the court incorporates the Kansas Supreme Court's version of the facts:

              On June 10, 2001, law enforcement officers were
       surveilling the Club VIP in Wichita. As the club was
       preparing to close around 2 a.m., a fight began in the

parking lot. Members of the "Bloods" gang were fighting each other. Among those present were Michael Walker, Timothy Carr, and Lowe, whom officers identified as gang members. Lowe was specifically identified as having been a member of the "Original Wichita Villain Bloods," a subset of the Bloods.

Shauntelle Thomas, Shawna Johnson, Jendayi Maples, and Tiesha Perry were among the crowd of onlookers at the club. When a group of officers arrived, Walker drove away with Thomas and two other men in a maroon small four-door car. Lowe drove away with Johnson in a silver or gray Cutlass.

Lowe and Walker, with the others, eventually drove to Fairmount Park. Two men then pulled up next to Walker and warned him that he was being followed. Walker and Lowe turned onto a side street, and shortly afterward shots were fired toward their cars. Everyone ducked, and Thomas covered her head. When she risked looking up, she saw a blue Cadillac speeding away. One of Walker's friends then took Thomas to a hotel room, where she spent the rest of the night. Lowe proceeded in another direction.

Lowe eventually pulled up next to John Hanna at a stoplight and told him that "some fools" had just shot at him and Walker. Hanna had previous ties to the gang with which Lowe was associated, so Lowe asked if Hanna had a gun and if he could ride with Hanna. Hanna interpreted the inquiry as an invitation to join in retaliatory gun fire, not as a request by Lowe to simply borrow his gun. He refused to participate, and Lowe drove away.

Club onlooker Maples arrived at her home around 3:50 a.m., and Walker called Maples on her cell phone as she pulled into the driveway. Maples had known Lowe for 12 or 13 years, so she was able to recognize his voice in the background while she conversed with Walker. She also heard Walker refer to Lowe by name and by his nickname "Little Lowe" and ask Lowe whether he "got the Tec," a semiautomatic firearm. One of the last things she recalled hearing was "that's the house" and then a series of about nine gunshots. Maples heard a car speed away, and the phone line went dead. She became frightened and immediately called Walker back on his cell phone. He assured her everything was fine but his ears were ringing from the shots.

At trial, Maples changed the original story she had told the police and said she "didn't know" who had been talking to Walker in the background. She admitted, however, that she had received death threats from Walker's girlfriend before trial. Officers near the scene confirmed

that they heard approximately seven to nine gunshots at about 4:02 a.m.

Shortly after the gunshots, officers found Michael Holt backing his car up Cleveland Street with its headlights off. Holt explained that he was scared because he had just dropped off a friend at his home at the corner of 11th and Cleveland. A small, dark car had passed him on Cleveland and then its headlights went off. The car pulled over, and Holt saw flashes coming out of the car and heard gunshots.

The shots heard by Maples and Holt had been fired into a house at 1032 North Cleveland Street, where Ron Mathis lived with his wife, Dallas Carter, and their children Ron, Shaquella, and 16-month-old Lexus Mathis. Lexus was mortally shot in the abdomen as she slept on a couch in the living room. Police later found shell casings from three types of cartridges near the curb directly across from the house: 9 mm, 40 caliber and 7.62 mm x 39 mm. Ron Mathis, known as C-Sane, had been involved in a gang, the "Insane Crips," a rival to the Bloods with whom Walker and Lowe were affiliated. Mathis had been a target of such violence in the past.

After the shooting, Walker went to Thomas' hotel room. Lowe and a third man went to Johnson's house, arriving around daybreak. Later that day, Lowe picked up Walker and Thomas at the hotel, made several stops, and then dropped off Walker and Thomas at the car they had ridden in the previous evening, a maroon 1989 Toyota Camry belonging to Scott Shaffer.

Walker had an arrangement with Shaffer; in exchange for the use of the car, Walker would supply him with drugs. When Walker returned the Camry to Shaffer this time, the windshield was damaged from projectiles and the trunk release would no longer latch. Walker told Shaffer he did not know what had caused the damage. Shell casings were found in the car, but latent fingerprints in the car did not match Lowe's, Walker's, or Carr's. One print matched Shaffer's.

Several days after the shooting, Lowe asked Maples to come to his mother's house to help him dispose of some guns. She refused.

Lowe, Walker, Carr, and friend Matthew Hendrix apparently discussed each of their whereabouts "to make sure out of concern that [there] wasn't nobody [sic] near where the incident happened." Lowe advised the others he intended to tell officers he stayed with a woman the entire evening. When he learned that police were looking for him

-3-

in connection with the shooting, he voluntarily came in to be interviewed. He was Mirandized and agreed to speak with the detectives. Lowe told the detectives that he had taken Johnson home from Club VIP after closing and remained at her house until the following morning around 11. He denied any involvement in the shooting.

　　Lowe was eventually charged with felony murder and criminal discharge of a firearm at an occupied dwelling. Before trial, the State sought to admit gang evidence. The district court granted the State's motion over Lowe's objection, finding the evidence was relevant for establishing the relationship of the defendant to witnesses and police officers and for explaining Lowe's actions. The court also found that an instruction would be necessary to properly advise the jury that the evidence served a limited purpose.

State v. Lowe, 276 Kan. 957, 958-60, 80 P.3d 1156 (2003)(Lowe I).

The Kansas Supreme Court affirmed petitioner's conviction on direct appeal. Id. Petitioner then sought post-conviction relief under K.S.A. 60-1507. The state district court denied relief and the Kansas Court of Appeals affirmed. Lowe v. State, No. 94,371, 143 P.3d 421, 2006 WL 2864741 (Kan. Ct. App. Oct. 6, 2006)(Lowe II). The Kansas Supreme Court denied review on February 13, 2007. Petitioner also filed another action in Sedgwick County District Court, which was summarily dismissed on April 28, 2005. Petitioner appealed to the Kansas Court of Appeals, and on August 17, 2007, the court affirmed. State v. Lowe, No. 96,547, 164 P.3d 850, 2007 WL 2377138 (Kan. Ct. App. Aug. 17, 2007). The Kansas Supreme Court denied review on November 6, 2007.

## II. ANALYSIS

This court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in AEDPA, if

petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

> A state court decision is "contrary to" Supreme Court precedent in two circumstances: (1) when "the state court applies a rule that contradicts the governing law set forth in [the Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that reached by the Court. Williams v. Taylor, 529 U.S. 362, 406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. 1495. Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411, 120 S. Ct. 1495; see also Thomas v. Gibson, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing Williams).
>
> Finally, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. See 28 U.S.C. § 2254(e)(1); Smith v. Mullin, 379 F.3d 919, 924-25 (10th Cir. 2004).

Hamilton v. Mullin, 436 F.3d 1181, 1186 (10th Cir. 2006).  An inherent limitation to review under § 2254 is that a habeas court will only consider alleged violations of federal law.  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991).  Moreover, the court will not normally consider federal questions unless they have first been presented to the state courts.  Picard v. Connor, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); but see 28 U.S.C. § 2254(b)(2) (permitting denial on the merits, despite failure to exhaust state remedies).

On appeal to the Kansas Supreme Court, petitioner asserted the following: (1) evidence of gang affiliation was improperly admitted at trial, (2) the court erred in failing to give an instruction relating to informant testimony, (3) there was no evidence of guilt and (4) cumulative error denied him a fair trial.  Id. at 958.  On state collateral appeal, petitioner alleged ineffective assistance of counsel for failing to object to the introduction of gang-affiliation evidence and the complaint, prosecutorial misconduct, admission of evidence, sufficiency of the evidence and cumulative error.  Petitioner then submitted a third motion to the court.  In his final motion, petitioner asserted similar arguments that had already been considered by the courts and, in addition, argued that his co-defendant's statements should have been suppressed.

Petitioner's application in this court for federal habeas relief states seven grounds for relief.  (Doc. 1).  Petitioner has essentially raised all issues that were present in all three appeals in state court.  The court will address each issue in turn.

-6-

**A.   Gang Evidence**[1]

Petitioner asserts that the evidence of his gang-affiliation was improperly admitted during his trial. "[S]tate court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." Walker v. Gibson, 228 F.3d 1217, 1239 (10th Cir. 2000)(quoting Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998). Petitioner wholly fails to explain how the state court's evidentiary ruling resulted in a fundamentally unfair trial. Viewed in light of the entire record, the court finds no fundamental unfairness which might warrant habeas corpus relief. The Kansas Supreme Court determined that the gang evidence was relevant to the crime charged, i.e. the murder was in retaliation for shots that had been fired at petitioner earlier in the evening by a rival gang.[2] Accordingly, the court fails to see how the admission of the gang evidence resulted in actual prejudice. See Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed.2d 353 (1993)(petitioner is "not entitled to habeas relief based on trial error unless [he] can establish that it resulted in 'actual prejudice.'") Petitioner's request for relief on this basis is

---

[1] Defendant argues that this issue should not be considered by the court because petitioner presented this question as one of state law on review. (Doc. 6 at 9). Petitioner, however, did assert in his brief before the Kansas Supreme Court that the admission of gang evidence deprived him of his constitutional right to a fair trial. Br. of Petitioner in Lowe I at p. 23. Even though petitioner did not expand his argument, out of an abundance of caution, the court will consider it.

[2] Petitioner's counsel did not object to this testimony during trial.

denied.

> **B.    Informant Instruction**

Petitioner asserts that the trial court erred in failing to give an informant instruction based on the testimony of Hanna. Petitioner failed to request an informant instruction.  The Kansas Supreme Court held that the failure to give the instruction was not erroneous since Hanna was not an informant within the meaning of the instruction and because Hanna testified that he was providing his testimony in hopes of avoiding a life sentence.

In a habeas proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden.  <u>Lujan v. Tansy</u>, 2 F.3d 1031, 1035 (10th Cir. 1993), *cert. denied*, 510 U.S. 1120, 114 S. Ct. 1074, 127 L. Ed.2d 392 (1994).  A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial. <u>Shafer v. Stratton</u>, 906 F.2d 506, 508 (10th Cir.), *cert. denied*, 498 U.S. 961, 111 S. Ct. 393, 112 L. Ed.2d 402 (1990).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737, 52 L. Ed.2d 203 (1977).

The instruction that defendant asserts should have been given reads as follows:

> You should consider with caution the testimony of an informant who, in exchange for benefit from the State, acts an agent for the State in obtaining evidence against a defendant, if that testimony is not supported by other evidence.

PIK Crim.3d 52.18-A.

-8-

The Kansas Supreme Court found no error because the informant instruction is only for individuals who were acting as an agent for the State at the time the information was learned.  <u>Lowe I</u>, 276 Kan. at 964.  At the time Lowe asked Hanna for a gun, Hanna was not acting as an agent for the State.  Hanna was not an informant.  <u>State v. Conley</u>, 270 Kan. 18, 25, 11 P.3d 1147 (2000)("The informant instruction issue is controlled by <u>State v. Barksdale</u>, 266 Kan. 498, 513-14, 973 P.2d 165 (1999) (the definition of 'informant' does 'not include a person who supplies information after being interviewed by police officers or who gives information as a witness during the course of the investigation'")).  Moreover, Hanna testified on direct and cross-examination that he was hoping to avoid a life sentence in exchange for his testimony.  At the time of the trial, there was no evidence that the State had promised Hanna any benefits in exchange for his testimony.  Moreover, the trial court did instruct the jury "to determine the weight and credit to be given the testimony of each witness."  (R. at Vol. II, 459).  This instruction, coupled with Hanna's testimony that he was testifying in order to receive favorable treatment, was sufficient.

Having reviewed the record, the court finds that petitioner has not shown that the failure of the trial court to give an informant instruction, in light of the circumstances of this case, rises to the level of an error that rendered the trial so fundamentally unfair as to cause a denial of a fair trial.

C.   **Sufficiency of the Evidence**

Petitioner alleges there was insufficient evidence to convict him of first degree felony murder.  Petitioner states:

No witnesses can place defendant Lowe at the crime scene. The jury could only surmise that someone was there shooting, but it isn't even clear how many were there. Finding three types of cartridge casings in an area where, according to the state's own witnesses, drive'by-s happen all the time, is simply not conclusive. Further, there was no compelling evidence or otherwise, regarding the other suspects being at the scene at all. Perhaps the best evidence the state had, other than their attempts to irrepressibly condemn gangs, was Jendayi Maples and Michael Walker's testimony. The state presented evidence that Ms. Maples was threatened, yet the threats did not seem to come from the defendant or his relations. The state introduced testimony that Maples heard defendant Lowe's voice on a phone, when that was not logically the case. It is the phone calls that provide convincing evidence in favor of defendant Lowe. There was an incoming call to Michael Walker's phone at 2:40 a.m. There was a call from Michael Walker's phone to Jendayi Maple's phone at 3:50 a.m. An incoming call to Michael Walker's phone was show to have occured at 3:54 a.m., which was apparently from the defendants cell phone.

Basically, numerous calls from the defendant's phone and Walker's phone was shown to have occurred at the time of the shooting itself. It is not logical for them to be in the same car, and be calling each other and other people while they are shooting at a house. This raises the necessary situation where this court should find that the jury erroneously reached a verdict of guilt. Even the person who lent the car to someone named Cooter, does not have a logical link to the crime, and certainly not to defendant Lowe. The state was able to show where Lowe was, everywhere except at the scene of the crime. We have Lowe at a club, at a parking lot, with a girl, and with other friends, everywhere but but in a car with the other suspects. That was pure speculation.

(Doc. 2 at 9-10)(sic throughout).

When considering sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution. <u>Spears v. Mullin</u>, 343 F.3d 1215, 1238 (10th Cir. 2003). Under that standard, habeas relief may only be granted if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Id.</u> (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). The jury's determination must be accepted as long as it is within the bounds of

reason.   <u>Messer v. Roberts</u>, 74 F.3d 1009, 1013 (10th Cir. 1996).
Though it involves factual issues, a challenge to the sufficiency of
the evidence is reviewed for legal error.   <u>Id.</u>   Accordingly, under
AEDPA the court is limited to determining whether the Kansas Supreme
Court reasonably applied the <u>Jackson</u> standard in this case.   <u>Id.</u>

   Under Kansas law, in order to convict petitioner of first degree
murder, the jury had to conclude that he killed the victim during the
commission of a felony.   <u>See</u> K.S.A. 21-3401(b)("Murder in the first
degree is the killing of a human being committed: . . .(b) in the
commission of, attempt to commit, or flight from an inherently
dangerous felony as defined in K.S.A. 21-3436 and amendments
thereto.").   Petitioner essentially argues that the evidence was not
sufficient to convict him because the cell phone records show that he
called Walker close to the time of the shooting and the State could
not produce direct evidence of his whereabouts.   To prove that
petitioner committed the murder, the State introduced evidence from
Hanna who testified that petitioner told Hanna that he had just been
shot at.   Hanna further testified that Lowe asked Hanna if he had a
gun and asked if he could ride with Hanna, a request that Hanna
understood to be an invitation to participate in a retaliatory
shooting.   Maples informed police that she was speaking to Walker on
the phone when she heard Lowe's voice in the background and heard
Walker address Lowe by proper name and nickname.   Maples then heard
nine shots.   Walker told Maples that his ears were ringing after the
gunshots.   Days after the shooting, Lowe asked Maples to come over to
his mother's house to assist in disposing of some guns.

   The court finds that based on all the above evidence, the jury's

-11-

determination that petitioner killed Lexus Mathis was rational.  The evidence is circumstantial, but it cannot be said that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. at 319 (1979).

The Supreme Court of Kansas concluded that the evidence was sufficient to uphold the jury verdict.  <u>Lowe I</u>, 276 Kan. at 966.  That conclusion was neither contrary to, nor an unreasonable application of, <u>Jackson</u>.  Accordingly, petitioner's application is denied on this claim.

### D.   Cumulative Error

Petitioner's fourth ground of error is that the cumulative effect of the errors denied him of his constitutional right to a fair trial. The Kansas Supreme Court determined that there was no cumulative error because petitioner failed to demonstrate that the trial court committed error.  <u>Lowe I</u>, 276 Kan. at 966.  The court agrees. Petitioner has failed to establish that the trial court committed error during his trial.[3]  Therefore, petitioner's application is

---

[3]  In his traverse, petitioner asserts that the errors also consisted of the admission of Maples inconsistent statements, bad character evidence and Officer Espinosa's testimony.  These errors were not asserted in the petition.  Errors first raised in the traverse will not normally be considered.  <u>See</u>, <u>e.g.</u>, <u>Vanderlinden v. Koerner</u>, No. 03-3488, 2006 WL 1713929 (D. Kan. June 21, 2006), citing <u>Loggins v. Hannigan</u>, No. 01-3311, 2002 WL 1980469 (10th Cir. Aug. 28, 2002)("We will not consider petitioner's argument that forcing the wife/victim to her car was insufficient to support the kidnapping charge as this issue was first raised in petitioner's traverse to respondents' answer to habeas petition."); <u>see also</u> <u>United States v. Sangs</u>, No. 00-60820, 2001 WL 1747884 (5th Cir. Dec. 11, 2001) (reaching the same conclusion as the other cases in a section 2255 context, stating the Movant "raised this argument for the first time in his traverse to the Government's answer and did not file a motion for permission to file an amended complaint as required by Fed. R. Civ. P. 15.... He has not shown that the district court abused its discretion in refusing to consider the new issue raised in his

denied on this claim.

### E.   Failure to Object

On his fifth claim of error, petitioner asserts that his counsel was ineffective for failing to object to the admission of gang evidence.  In the alternative, petitioner asserts in his sixth claim that the Kansas Supreme Court was incorrect in determining that petitioner failed to raise an objection to the admission of gang evidence.  The Kansas Court of Appeals determined that his claim for ineffective assistance of counsel was without merit because the Kansas Supreme Court addressed the admission of gang evidence on the merits.

A claim of ineffective assistance of counsel in violation of the Sixth Amendment requires petitioner to show that 1) his counsel's

---

traverse."); United States v. Barrett, 178 F.3d 34, 35 (1st Cir. 1999), cert. denied, 528 U.S. 1176 (2000) ("A Traverse is not the proper pleading to raise additional grounds for relief.").

Regardless, petitioner failed to raise these issues on direct appeal.  Instead, petitioner presented these issues to the state courts in his motion for ineffective assistance of counsel.  The Kansas Court of Appeals declined to review those claims on the merits. It is clear that the Kansas Court of Appeals determined this issue adversely to petitioner on an independent state ground.  The court's decision was based on the Kansas Supreme Court's ruling that a petitioner cannot use a proceeding under K.S.A. 60-1507 for trial errors.  The court did not consider the merits of petitioner's claims. The court considered no federal precedent of any kind in reaching its determination.  Thus, the Kansas Court of Appeals relied on an independent and adequate state ground in finding that the relief petitioner sought was not available.

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991).  Petitioner has neither alleged nor shown cause and prejudice.  Therefore, petitioner has not overcome the procedural default.  Moreover, the court has found that no fundamental miscarriage of justice exists.

Petitioner's claim of cumulative error based on the errors raised in his traverse is accordingly procedurally defaulted.  Petitioner's application for habeas corpus relief on this ground is denied.

performance fell below an objective standard of reasonableness; and 2) but for his counsel's unreasonable errors, there is a reasonable probability that the outcome of the proceeding would have been different. <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Petitioner cannot establish that the outcome of the proceeding would have been different if his trial counsel would have objected to the admission of the gang evidence.  The Kansas Supreme Court addressed the issue of gang evidence on the merits and found that the trial court did not commit error.  Therefore, the result would have been the same if counsel had objected.  The Kansas Court of Appeals' decision was not an unreasonable application of <u>Strickland</u>.

The court also finds that petitioner has failed to show error on his sixth claim.  Petitioner asserts that the Kansas Supreme Court incorrectly determined that trial counsel failed to object to the admission of gang evidence.  Even if the Kansas Supreme Court's decision was incorrect, which the court does not believe that it was, the result would be the same.  The alleged error was reviewed on the merits and the court found no error.

Therefore, petitioner's application is denied on this claim.

**F.   Walker's Statements**

Petitioner asserts that his co-defendant Michael Walker's statements should have been suppressed and, therefore, the arrest warrants and any evidence seized which relied on those statements should have been suppressed according to the fruits of the poisonous

-14-

tree doctrine.[4]  (Doc. 2 at 14-15).  The Kansas Court of Appeals determined that there was no merit to petitioner's claim of ineffective assistance of counsel because Walker's statements were not raised during Lowe's trial and the police had already focused on petitioner after obtaining a statement from Maples.[5]  <u>Lowe II</u>, 2006 WL 2864741 at *3; <u>Lowe III</u>, 2007 WL 2377138 at *2.

Defendant responds that petitioner's claim of error must fail because the police had already identified petitioner as a suspect in the case prior to Walker's interview.

> The Court has long recognized the validity of the independent source doctrine.  Under this exception, evidence that has been discovered by means wholly independent of any constitutional violation is admissible against a criminal defendant, notwithstanding any antecedent Fourth, Fifth, or Sixth Amendment violation.  In applying the doctrine in the Fourth Amendment context, the dispositive question is whether the source of probable cause claimed by the government is in fact a genuinely independent source of the information and tangible evidence at issue.  A source is genuinely independent if the government can show that the evidence was obtained by means sufficiently distinguishable to be purged of the primary taint.  By contrast, a source is not independent if, granting establishment of the primary illegality, the evidence has been come at by the exploitation of the illegality.  The principal justification for the doctrine rests upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. So long as a later, lawful seizure is genuinely independent of an earlier, tainted one ... there is no reason why the independent source doctrine should not apply.  The government bears the burden of showing, by a preponderance of the evidence, that there is truly an

_____

[4] Although this court doubts that petitioner has standing to challenge the admissibility of Walker's statements, the Kansas Court of Appeals did not address that issue.  The Kansas Court of Appeals denied relief on the merits of petitioner's claim.  Therefore, this court will also address the merits of petitioner's claim.

[5] Also, trial counsel successfully moved to suppress Walker's statements during Lowe's trial.

independent source for the challenged evidence.
<u>United States v. Forbes</u>, 528 F.3d 1273, 1278-79 (10th Cir. 2008)(internal citations omitted).

Petitioner's pleadings do not address defendant's and the Kansas Court of Appeals' position that petitioner's involvement with the murder was determined by an independent source, Maples. The police had already gained the information from Maples at the time of Walker's interview. Obviously, Maples provided the information that led to the questioning of Walker. Since Walker's statements were not admitted in Lowe's trial and Maples was an independent source who supplied the police with information that would lead to Lowe's involvement of the murder, any illegal activity in obtaining a statement from Walker does not implicate petitioner's constitutional rights to a fair trial.

Therefore, petitioner's application is denied on this claim.

**III. CONCLUSION**

Petitioner's application for habeas corpus is denied. (Doc. 1). The clerk shall enter judgment for defendant in accordance with Fed. R. Civ. P. 58.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was

briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172
(D. Kan. 1992).  Any such motion shall not exceed three pages and
shall strictly comply with the standards enunciated by this court in
<u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall
not exceed three pages.  No reply shall be filed.

    IT IS SO ORDERED.

    Dated this <u>  21st  </u> day of August 2008, at Wichita, Kansas.


    s/ Monti Belot
    Monti L. Belot
    UNITED STATES DISTRICT JUDGE